UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------X
                                   :
VINGAL CARTER,                        :
                                     :
                       Plaintiff,      :
                                     :
           - against -             :
                                     :
                                     :
JOSEPH PONTE, MAXSOLAINE MINGO,   :
and C.O. Ward,                    :
                                     :
                         Defendants.   :
                                     :
---------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: ___9/28/2018___

17-CV-1830 (VSB)

**OPINION & ORDER**

Appearances:

Vingal Carter
Brooklyn, New York
*Pro se Plaintiff*

Evan F. Jaffe
New York City Law Department
New York, New York
*Counsel for Defendants*

<u>VERNON S. BRODERICK</u>, United States District Judge:

       Plaintiff Vingal Carter, proceeding pro se, brings this action against Defendants Warden

Maxsolaine Mingo ("Warden Mingo") and Correctional Officer Ware ("Officer Ware," and

collectively, "Defendants"), pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his

constitutional rights when they searched him while he was incarcerated at the Anna M. Kross

Center ("AMKC") on Rikers Island.  Before me is Defendants' motion to dismiss pursuant to

Federal Rule of Civil Procedure 12(b)(6).  Because I find that the general release that Plaintiff

signed in April 2017 bars all of the claims in the instant action, Defendants' motion to dismiss,

which I convert to one for summary judgment, is GRANTED.

## I. Background[1]

Plaintiff was an inmate at AMKC on February 7, 2015 when during a "general institutional pat frisk search for contraband items" he was pat frisked for contraband by Officer Ware.[2]  (Am. Compl. 5, ¶ 1.)[3]  Officer Ware ordered Plaintiff to place both his hands and feet against the wall and conducted the search by "put[ting] both of her hands [and] fingers up in the rectum area" and "rubbing her hands . . . all over [P]laintiff['s] . . . crotch."  (*Id.* 5, ¶ 2.)  Plaintiff verbally asked Officer Ware to remove her hands and requested to see the area supervisor.  (*Id.* 5, ¶ 3.)  The matter was referred to Warden Mingo for review, but Warden Mingo failed to answer the grievance or investigate the incident.  (*Id.* 6, ¶ 4.)

## II. Procedural History and the April 2017 General Release

Plaintiff has initiated three lawsuits against Defendants and various other officials of the City of New York:  the first, on October 3, 2016, *see Carter v. Mingo*, No. 16 Civ. 7736 (ER), 2018 WL 3329856 (S.D.N.Y. July 6, 2018) ("*Carter I*"); the second, on December 7, 2016, *see Carter v. Mingo*, 16 Civ. 9466 (VEC) (RLE) ("*Carter II*"); and the instant action, on March 10, 2017, (*see* Doc. 2).  With respect to the instant action, after Plaintiff filed the complaint on March 10, 2017 (the "Complaint"), Chief Judge McMahon granted Plaintiff leave to proceed *in forma pauperis* on March 17, 2017, (Doc. 4), and issued an order to amend the Complaint on

---

[1] The following factual summary is drawn from the allegations of the amended complaint, which I provide for background only.  As discussed *infra*, these allegations do not bear on my reasoning in this Opinion & Order.  My references to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

[2] In his amended complaint, Plaintiff names "C.O. Ward" as a Defendant, (Doc. 1), and on August 25, 2017, I issued an order pursuant to *Valentin v. Dinkins*, 121 F.3d 72 (2d Cir 1972), directing the Office of the Corporation Counsel to provide the identity of this individual (the "*Valentin* Order"), (*see* Doc. 16).  The New York City Law Department subsequently identified the individual whom plaintiff purports to sue as Correction Officer Ware, Shield #15185. (*See* Doc. 25.)  I will thus refer to the second Defendant in this case by his correct name, Officer Ware, throughout this Opinion & Order.

[3] "Am. Compl." refers to Plaintiff's Amended Complaint, filed May 24, 2017.  (Doc. 8.)  The Amended Complaint does not contain consecutive page numbers; therefore, I reference the page numbers given to the Amended Complaint by the Court's ECF system.

March 27, 2017, (Doc. 5). Plaintiff filed an amended complaint on May 24, 2017 (the

"Amended Complaint"), (Doc. 8), and on June 9, 2017 the case was reassigned to me. On June

12, 2017, I issued an order directing Defendants to waive service of summons with respect to the

Amended Complaint and dismissing Plaintiff's claims against Joseph Ponte for lack of personal

involvement. (Doc. 10.) When the New York City Law Department declined to waive service

on behalf of Officer "Ward" because there was more than one officer named Ward assigned to

AKMC, I issued the *Valentin* Order directing the Office of the Corporation Counsel to confirm

the identity of the correction officer Plaintiff was seeking to sue. (Doc. 16.) The New York City

Law Department responded to the *Valentin* Order on October 19, 2017 identifying the Officer as

Officer Ware. (Doc. 25.)

On April 19, 2017, while both *Carter I* and the instant action were pending, Plaintiff

entered into a settlement agreement and release to resolve *Carter II* (the "April 2017 General

Release").[4] (*See* Jaffe Decl. Ex. B.)[5] The April 2017 General Release states:

> VINGAL CARTER . . . as "RELEASOR," in consideration of the payment of
> $7,500,00.00 . . . hereby voluntarily, knowingly, and willingly releases and forever
> discharges the City of New York, and all past and present officials, officers,
> directors, managers, administrators, employees, agents, assignees, lessees, and
> representatives of the City of New York, and all other individually named
> defendants and/or entities represented and/or indemnified by the City of New York,
> collectively the "RELEASEES", from any and all liability, claims, or rights of
> action alleging a violation of civil rights and any and all claims, causes of action,
> suits, . . . and demands known or unknown, at law, in equity, or by administrative
> regulations, which RELEASOR . . . now has or hereafter can, shall, or may have,
> either directly or through subrogees or other third persons, against the
> RELEASEES for, upon or by reason of any matter, cause or thing whatsoever that
> occurred through the date of this RELEASE.

---

[4] Plaintiff also attaches an older general release, dated September 15, 2015, to a letter filed in response to
Defendants' motion to dismiss on December 4, 2017 (the "September 2015 General Release"). (Doc. 27, at 4–5.)

[5] For the reasons stated, *see infra* Section IV.A.2, I will consider the April 2017 General Release and the terms of
the release in deciding the instant motion to dismiss, which I convert to a motion for summary judgment. "Jaffe
Decl." refers to the Declaration of Evan F. Jaffe in Support of Defendant's Motion to Dismiss the Amended
Complaint Pursuant to Fed. R. Civ. P. 12(b)(6), filed September 5, 2017. (Doc. 21.)

(Jaffe Decl. Ex. B, at 3.)[6]  The April 2017 General Release was signed by Plaintiff on April 19,

2017 and notarized by Danielle Stringer, a Notary Public in the State of New York, Queens

County, on the same day.  (*Id.*)  On that same day, Plaintiff also signed a stipulation and order of

dismissal of the *Carter II* action, which Judge Valerie E. Caproni so ordered on May 1, 2017.

(*Carter II*, at Doc. 21.)

On September 5, 2017, Defendants filed a motion to dismiss in this action, along with a

declaration and memorandum of law in support.[7]  (Docs. 20–22.)  Defendants argued that (1)

Plaintiff's claims should be dismissed because his claims are foreclosed by the April 2017

General Release and (2) even if his claims were not barred, Plaintiff has failed to state a plausible

§ 1983 claim.  (*See generally* Doc. 22.)  Plaintiff filed a letter on December 4, 2017, (Doc. 27),

as well as an opposition to a motion for summary judgment on December 11, 2017, (Doc. 28),

which included Plaintiff's Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1

("Plaintiff's 56.1 Statement"), (Doc. 28, at 8–9).[8]  Defendants filed Defendants Mingo and

Ware's Opposition to Plaintiff's Statement of Undisputed Facts Pursuant to Local Civil Rule

56.1 ("Defendants' Opposition to Plaintiff's 56.1"), (Doc. 29), as well as a reply in support of

their motion to dismiss, (Docs. 30–31), on December 26, 2017.  Plaintiff then filed a reply

affirmation in opposition to Defendants' motion to dismiss on January 26, 2018.[9]  (Doc. 35.)

---

[6] The April 2017 General Release does not contain consecutive page numbers; therefore, I reference the page numbers given to the April 2017 General Release by the Court's ECF system.

[7] Although the motion to dismiss was initially filed by Warden Mingo, on November 6, 2017, as part of the New York City Law Department's response to the *Valentin* Order, Officer Ware sought to join Warden Mingo's motion to dismiss, (Doc. 26), and I thus consider the motion to dismiss filed on September 5, 2017 as both Warden Mingo and Officer Ware's response to the Amended Complaint.

[8] Plaintiff's opposition to a motion for summary judgment, (Doc. 28), contains various documents that have been given their own page numbers; therefore the document does not have consecutive page numbers.  Thus, I reference the page numbers given to this document by the Court's ECF system.

[9] Because I find that conversion of the instant motion into a motion for summary judgment is warranted, *see supra*, I will consider Plaintiff's opposition to a motion for summary judgment, (Doc. 28), and Defendants' Opposition to Plaintiff's 56.1, (Doc. 29).

On July 12, 2018, defendants filed a letter notifying me that Judge Edgardo Ramos granted Defendants' motion for summary judgment in *Carter I*. (Doc. 39.)

### III. <u>Legal Standard</u>

#### A. *Conversion to a Motion for Summary Judgment*

"If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). A court properly converts a motion to dismiss into a motion for summary judgment when "a motion to dismiss relies on matters outside the pleadings." *Muhammad v. Schriro*, No. 13-cv-1962 (PKC), 2014 WL 4652564, at *3 (S.D.N.Y. Sept. 18, 2014) (internal quotation marks omitted); *see also Parada v. Banco Industrial De Venezuela, C.A.*, 753 F.3d 62, 67–68 (2d Cir. 2014).

Typically a court "must give notice to the parties before converting a motion to dismiss . . . into one for summary judgment," *Gurarv v. Winehouse*, 190 F.3d 37, 43 (2d Cir. 1999), but "[a] party cannot complain of lack of a reasonable opportunity to present all material relevant to a motion for summary judgment when both parties have filed exhibits, affidavits, counter-affidavits, depositions, etc. in support of and in opposition to a motion to dismiss," *In re G. & A. Books, Inc.*, 770 F.2d 288, 295 (2d Cir. 1985); *see also Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 573 (2d Cir. 2005) ("It is within the discretion of this Court to convert a motion filed under Fed.R.Civ.P.12(b)(6) into one seeking summary judgment when matters outside the pleadings have been presented and accepted by the Court, and where all parties have been given a reasonable opportunity to present materials pertinent to the motion's disposition." (internal quotation marks omitted)). Further, "[c]ourts in the Eastern and Southern Districts of New York have repeatedly concluded that providing the notice called for by Local Civil Rule

12.1, particularly when coupled with an evidentiary submission by the non-moving party, constitutes adequate notice that a motion to dismiss may be converted to one for summary judgment, even without further instruction from the Court." *Edo v. Martiny*, No. 15-CV-202 (CBA), 2016 WL 7839337, at *3 (E.D.N.Y. Aug. 26, 2016), *report and recommendation adopted*, 2017 WL 785653 (E.D.N.Y. Mar. 1, 2017); *see also Jackson v. Hanson*, No. 12 Civ. 654(DAB), 2014 WL 787820, at *13 (S.D.N.Y. Feb. 25, 2014); *Collins v. Goord*, 438 F. Supp. 2d 399, 412 & n.14 (S.D.N.Y. 2006). "The essential inquiry is whether the [non-moving party] should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings." *In re G. & A. Books*, 770 F.2d at 295.

**B.** *Summary Judgment*

If a court determines that conversion is appropriate, the court analyzes the motion under the summary judgment standard under Rule 56, which provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a); *see also Fay v. Oxford Health Plan*, 287 F.3d 96, 103 (2d Cir. 2002). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law," and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.*

On a motion for summary judgment, the moving party bears the initial burden of establishing that no genuine factual dispute exists, and, if satisfied, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial," *id.* at

6

256, and to present such evidence that would allow a jury to find in his favor, *see Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000). To defeat a summary judgment motion, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1). In the event that "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2), (3).

In considering a summary judgment motion, the court must "view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (citation and internal quotation marks omitted). "[I]f there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party," summary judgment must be denied. *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002). "[A] plaintiff must provide more than conclusory allegations to resist a motion for summary judgment." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008). The ultimate inquiry is "whether the evidence can reasonably support a verdict in plaintiff's favor." *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 157 (2d Cir.

7

2000).

### C. *Pro Se Litigant*

Pro se litigants are afforded "special solicitude" on motions for summary judgment.
*Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988). Courts read the pleadings, briefs, and
opposition papers of pro se litigants "liberally and interpret them to raise the strongest arguments
that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (internal quotation
marks omitted); *see also Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (stating that the submissions of
pro se litigants are "held to less stringent standards than formal pleadings drafted by lawyers"
(internal quotation marks omitted)); *see also Monterroso v. Sullivan & Cromwell, LLP*, 591 F.
Supp. 2d 567, 577 (S.D.N.Y. 2008) ("District courts should read the pleadings of a pro se
plaintiff liberally[,] and [the] same principles apply to briefs and oppositions submitted by pro se
litigants." (internal quotation marks omitted)).

However, "pro se status does not exempt a party from compliance with relevant rules of
procedural and substantive law." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d
Cir. 2006) (internal quotation marks omitted); *see also Jorgensen v. Epic/Sony Records*, 351
F.3d 46, 50 (2d Cir. 2003) (stating that the obligation to read pro se pleadings liberally "does not
relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary
judgment"). "[A] pro se party's 'bald assertion,' completely unsupported by evidence, is not
sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424,
429 (S.D.N.Y. 1995) (quoting *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

## IV.    Discussion

### A.    *Conversion to a Motion for Summary Judgment*

I find that Plaintiff has been provided with sufficient notice such that the instant motion may be appropriately converted to a motion for summary judgment under Rule 56.  Defendants served Plaintiff with notice pursuant to Local Civil Rule 12.1, (*see* Jaffe Reply Decl. Ex C; *see also* Defs.' Reply Mem. 1 n.1),[10] and Plaintiff filed an opposition to a motion for summary judgment which included Plaintiff's 56.1 Statement, (Doc. 28), as well as multiple affidavits and letters responding to Defendants' argument that the motion to dismiss should be converted to one for summary judgment, (*see* Docs. 27, 32–35).  Therefore, Plaintiff "should reasonably have recognized the possibility that the motion might be converted into one for summary judgment," *In re G. & A. Books*, 770 F.2d at 295, and these circumstances support conversion, *see Edo*, 2016 WL 7839337, at *3 (finding conversion appropriate where the defendants had served the pro se plaintiff with notice as required by Local Civil Rule 12.1 and the plaintiff submitted additional materials in response to the notice); *Roberts v. Doe 1*, No. 14 Civ. 9174(AJP), 2015 WL 670180, *2 (S.D.N.Y. Feb. 17, 2015) (finding that conversion was appropriate where the parties had "time to submit any additional facts or argument in connection with the now-summary judgment motion"); *Collins*, 438 F. Supp. 2d at 412 & n.14 (finding that conversion was appropriate where "both parties submitted materials outside the pleadings" and the defendants had served the pro se plaintiff with a notice pursuant to Local Civil Rule 12.1).  Therefore, conversion of the motion to dismiss to a motion for summary judgment is warranted here.

---

[10] "Jaffe Reply Decl." refers to the Reply Declaration of Evan F. Jaffe in Further Support of Defendants' Motion to Dismiss the Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6), filed December 26, 2017.  (Doc. 30.)  "Defs.' Reply Mem." refers to the Reply Memorandum of Law in Further Support of Defendants Mingo and Ware's Motion to Dismiss, filed December 26, 2017.  (Doc. 31.)

**B.** *General Release*

Defendants argue that Plaintiff's claims in the instant action are barred pursuant to the

April 2017 General Release because "Plaintiff explicitly committed himself in the [April 2017]

General Release to releasing the City and its employees from any and all claims through the date

of April 19, 2017." (Defs.' Mem. 4.)[11]  Having converted Defendants' motion from a motion to

dismiss to a motion for summary judgment, I now consider whether the April 2017 General

Release bars Plaintiff's claims.

### 1. Applicable Law

"A release is a species of contract and 'is governed by principles of contract law.'"

*Golden Pac. Bancorp v. F.D.I.C.*, 273 F.3d 509, 514 (2d Cir. 2001) (quoting *Bank of Am. Nat'l

Tr. & Sav. Ass'n v. Gillaizeau*, 766 F.2d 709, 715 (2d Cir. 1985)).  Whether a contract is

ambiguous is a question for the court to decide.  *Id.*  "The interpretation of an unambiguous

contract—including a release—is also a question of law reserved for the court."  *Id.* at 515.

Under New York law, "a release that is clear and unambiguous on its face and which is

knowingly and voluntarily entered into will be enforced."  *Pampillonia v. RJR Nabisco, Inc.*, 138

F.3d 459, 463 (2d Cir. 1998).  "Words of general release are clearly operative not only as to all

controversies and causes of action between the releasor and releasees which had, by that time,

actually ripened into litigation, but to all such issues which might then have been adjudicated as

a result of pre-existent controversies."  *Tromp v. City of New York*, 465 F. App'x 50, 52 (2d Cir.

2012) (summary order) (quoting *A.A. Truck Renting Corp. v. Navistar, Inc.*, 916 N.Y.S.2d 194,

196 (2d Dep't 2011)).  "General releases are enforceable as to civil rights claims."  *Waters v.*

---

[11] "Defs.' Mem." refers to the Memorandum of Law in Support of Defendant Warden Mingo's Motion to Dismiss, filed September 5, 2017.  (Doc. 22.)

*Douglas*, No. 12 Civ. 1910(PKC), 2012 WL 5834919, at \*3 (S.D.N.Y. Nov. 14, 2012). "When

general language is used in the releasing document, the release is to be construed most strongly

against the releasor." *Tromp*, 465 F. App'x at 52 (quoting *Consorcio Prodipe, S.A. de C.V. v.

Vinci, S.A.*, 544 F. Supp. 2d 178, 189 (S.D.N.Y 2008)).

For a contract to be void for duress, "one of three circumstances must be present"—there

must be "duress by physical compulsion, duress by threat, or duress by undue influence."

*Gaughan v. Rubenstein*, 261 F. Supp. 3d 390, 403 (S.D.N.Y. 2017) (quoting *McIntosh v.

Consolidated Edison Co.*, No. 82065, 96 CIV 3624(HB), 1999 WL 151102, at \*2 (S.D.N.Y.

Mar. 19, 1999)); *see also Reid v. IBM Corp.*, No. 95 Civ. 1755(MBM), 1997 WL 357969, at \*6

(S.D.N.Y. June 26, 1997). Further, "[d]uress may not be found merely from the existence of a

difficult bargaining position" and "[t]o succeed . . . a plaintiff must show that he was compelled

to agree to its terms by way of wrongful and oppressive conduct that precluded the plaintiff from

the exercise of his own free will." *Gaughan*, 261 F. Supp. 3d at 403 (quoting *McIntosh*, 1999

WL 151102, at \*2).

### 2. Application

I find that the language of the April 2017 General Release is unambiguous. The April

2017 General Release plainly bars Plaintiff from bringing any future claims or causes of action

against the City of New York or any of its officers for any civil rights claims arising prior to the

date it was executed—April 19, 2017. (*See* Jaffe Decl. Ex. B, at 3.) The language of the Release

is not susceptible to other interpretations, and includes the claims in this action, which Plaintiff

brought against Defendants—both employees of the City of New York—for a search that took

place while Plaintiff was an inmate at AMKC in February 2015, (*see* Am. Compl. 5, ¶ 1), more

than two years prior to April 19, 2017—the date Plaintiff signed the April 2017 General Release,

(*see* Jaffe Decl. Ex. B, at 3). "Courts in this Circuit repeatedly hold that releases [such as this one] bar suit against the City and its employees for conduct that pre-dates the release." *See Roberts*, 2015 WL 670180, at \*5 (collecting cases).

Construing his pleadings liberally, Plaintiff appears to argue that the April 2017 General Release should not be enforced because of duress. Plaintiff alleges that he signed the April 2017 General Release because (1) Evan Jaffe, an Assistant Corporation Counsel for the City, "persuaded [him]" that if he didn't settle he might "very well lose [his] case altogether" and (2) Jaffe represented that if he took the settlement he could sue his prior counsel for "forg[ing] [his] signature on a [prior release]."[12] (*See* Pl.'s Ltr. 2.) Plaintiff states that after Jaffe persuaded him the first time, he had a change of heart, but that Jaffe "co-hearsed [sic] and convinced" Plaintiff to sign the document by telling him that "all [he] had to do [was] sign the document, get it notarized and send it back to him." (*Id.*) Plaintiff also states that he asked Jaffe whether Jaffe could "guarantee" that Plaintiff would receive settlement funds allegedly "stolen" by his counsel at the time the September 2015 General Release was signed, and that Jaffe told Plaintiff he could not guarantee it but that Plaintiff "should" be able to receive the funds. (*Id.*) Lastly, Plaintiff states that he is "medically blind in [his] left eye" and "cannot read fine print" and therefore could not understand the document. (*Id.*)

Plaintiff's allegations, however, do not amount to duress. Plaintiff does not allege that Jaffe threatened him or physically compelled him to act. Rather, he asserts that Jaffe exerted

---

[12] Plaintiff alleges that there was a prior release that was signed without his knowledge on September 15, 2015, the September 2015 General Release, (*see* Pl.'s Ltr. 1–2), and attaches this release to his letter, (*id.* at 4–6). He alleges in his letter that at the time he was considering signing the April 2017 General Release, Jaffe told him that he would be able to sue his prior counsel for signing the September 2015 General Release without his permission. (*See id.* at 2.) He does, however, admit that he knew, and had several discussions about, the April 2017 General Release with Jaffe, which he signed on April 19, 2017. (*See id.* at 2–3.) I will consider the April 2017 General Release and its terms for the purpose of this motion, as the Defendants argue that the April 2017 General Release bars Plaintiff's claims. (*See* Defs.' Mem. 4–6.) "Pl.'s Ltr." refers to the notarized letter from Plaintiff, filed December 4, 2017. (Doc. 27.)

undue influence by telling him that he would be better off settling and signing the Release if he did not want to risk losing his case. (*See* Pl.'s Ltr. 2.) The fact that Jaffe allegedly told Plaintiff that he could lose his case if he did not settle—stating a risk inherent in any litigation—does not indicate that Jaffe engaged in "oppressive conduct that precluded the plaintiff from the exercise of his own free will." *Gaughan*, 261 F. Supp. 3d at 403 (quoting *McIntosh*, 1999 WL 151102, at *2). In fact, Plaintiff had time to read through and contemplate the terms of the Release, as indicated by the fact that he changed his mind about whether to sign it, (Pl.s' Ltr. 1–2), and later signed the document in the presence of a notary, (*id.* at 2; *see also* Jaffe Decl. Ex. B). In addition, Jaffe did not make any promises with respect to Plaintiff suing his prior counsel, and merely stated that Plaintiff "should" be able to receive his settlement funds pursuant to a prior settlement. (Pl.'s Ltr. 2.)

Plaintiff also appears to argue that his former attorney, Matthew Waller, did not explain the April 2017 General Release to him. (Doc. 28 at 2 (stating that his lawyer "never explained to me on the phone . . . that I was receiving a General Release, and what to expect or what the criteria was by me signing it").) As an initial matter, Plaintiff commenced *Carter II* pro se and was not using counsel to prosecute the action. Even if I were to find that Plaintiff was represented by Mr. Waller during the limited period of negotiations for the April 2017 General Release, Plaintiff has put forth no evidence, other than his say-so, to allege a claim of ineffective assistance of counsel sufficient to set aside the unambiguous terms of the Release. Specifically, Plaintiff has not shown that Mr. Waller's conduct was so "deficient" as to constitute ineffective assistance of counsel, and even if he could, that the result of the action would have been any different. *Cf. Figueroa v. Schiraldi*, No. 10 Civ. 1821(RA)(HBP), 2013 WL 3486925, at *4 (S.D.N.Y. July 8, 2013) ("First, the petitioner must demonstrate that counsel's performance was

so 'deficient' that it 'fell below an objective standard of reasonableness;' and second, there must be a 'reasonable probability that, but for counsel's . . . errors, the result of the proceeding would have been different.'" (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984))).

Lastly, Plaintiff's claim that he was medically impaired in his left eye and could not read the April 2017 General Release is without merit. Plaintiff signed the April 2017 General Release after repeated conversations about the document with Jaffe, (*see* Doc. 30, at 1–2), and Plaintiff has not alleged that Jaffe engaged in any "wrongful" or "oppressive" conduct with respect to his alleged visual impairments. Further, given that Plaintiff has commenced multiple lawsuits in this Court in which he has written and filed multiple complaints, filed pleadings, and responded to Defendants' motion in this case, I find it inconceivable that Plaintiff could not read the two-page Release or take whatever steps he had taken in the past to create and review multiple filings. Thus, I find that there is no genuine dispute of fact that the April 2017 Release is enforceable and bars Plaintiff's claims.

## V.     **Conclusion**

Because Plaintiff has been provided with sufficient notice that Defendants' motion may be converted to a motion for summary judgment, Defendants' motion is converted to a motion for summary judgment. The motion for summary judgment is GRANTED and Plaintiff's claims are dismissed with prejudice, as the April 2017 General Release is valid and enforceable and bars Plaintiff from bringing the instant action, and any amendment would be futile.

The Clerk of Court is respectfully directed terminate the pending motion, (Doc. 20), enter judgment for Defendants, mail a copy of this Opinion & Order and the judgment to the pro se Plaintiff, and close this case.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this Order would

not be taken in good faith, and therefore *in forma pauperis* status is denied for the purposes of an

appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

Dated: September 28, 2018
        New York, New York

Vernon S. Broderick
United States District Judge